# Order

Michigan Supreme Court
Lansing, Michigan

February 7, 2018

Stephen J. Markman,
Chief Justice

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement,
Justices

155631

OLIVIA FAY DENNIS,
　　　　　Plaintiff-Appellee,

v

STEVE TYLER,
　　　　　Defendant-Appellant.

_____/

SC:  155631
COA:  331503
Allegan CC:  13-052663-DM

On order of the Court, the application for leave to appeal the March 21, 2017 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should now be reviewed by this Court.

MARKMAN, C.J. (*dissenting*).

I respectfully dissent from this Court's order denying leave to appeal.  I would grant leave to appeal because I believe that the Court of Appeals majority likely erred by concluding that defendant was not an "affiliated father" under MCL 722.1433(1) of the Revocation of Paternity Act (ROPA), MCL 722.1431 *et seq.*, on the basis of an incorrect interpretation of that provision in *Glaubius v Glaubius*, 306 Mich App 157, 168 (2014).  Moreover, the Court of Appeals' application of this standard here "will cause material injustice," MCR 7.305(B)(5)(a), in that a child may effectively be left without a father.

BT was born to plaintiff Olivia Fay Dennis on July 26, 2012.  Plaintiff married defendant Steve Tyler the next day.  The birth certificate identified defendant as the father.  Defendant believed that he had signed an acknowledgment-of-parentage form for BT, but it turned out that he actually did not.  On December 4, 2013, plaintiff filed a pro se complaint for divorce.  In her complaint, plaintiff listed BT under the heading of "minor children of the parties *born or adopted during or before* the marriage" and circled the word "before."  She further listed her younger child (BD) under the heading "children born during the marriage that are *not* the husband's children."  Finally, she indicated that it would be "in the best interests of the children that the Court order" reasonable parenting time and child support.  Nevertheless, on July 7, 2014, seven months after her

complaint for divorce had been filed, plaintiff filed a motion requesting an order of nonpaternity of defendant as to her two children. Plaintiff then obtained a DNA test for BD, which revealed that defendant was not his father, but failed to obtain one for BT. When plaintiff sought to obtain a DNA test for BT, the trial court noted her extensive delay in requesting such a test and ordered the parties to submit a proposed judgment to the court or the case would be dismissed. Plaintiff submitted a proposed judgment listing defendant as BT's father, providing plaintiff and defendant joint legal and physical custody over BT, and providing defendant "reasonable parenting time." On December 3, 2014, the court closely reviewed the proposed judgment with the parties, who agreed to its terms, and then signed it. Plaintiff subsequently filed a motion to revoke defendant's paternity, noting that a DNA test conducted after the divorce judgment had entered demonstrated that defendant was not BT's biological father. The trial court denied plaintiff's motion, but the Court of Appeals majority reversed and remanded for further proceedings. *Dennis v Tyler*, unpublished per curiam opinion of the Court of Appeals, issued March 21, 2017 (Docket No. 331503). Judge MARKEY dissented, concluding that the trial court had properly determined that defendant was an "affiliated father." *Id.* (MARKEY, J., dissenting).

The issue is whether defendant's paternity should now be revoked. Under ROPA, there are five classifications of fathers. Relevant to this case, MCL 722.1433(1) defines an "affiliated father" as "a man who has been determined *in* a court to be the child's father." When analyzing whether defendant here was an "affiliated father," both the Court of Appeals majority and dissent relied, as they were bound to do, on that court's prior interpretation of "affiliated father" in *Glaubius*, 306 Mich App at 168. In *Glaubius*, the plaintiff (mother) and the defendant (father) were married, and a child was born during their marriage. *Id.* at 161. The plaintiff filed for divorce, alleging that there was one child born of the marriage. *Id.* The parties entered into a consent judgment of divorce, and the judgment referred to the defendant as the child's father and granted him custody and visitation. *Id.* at 162. Later that year, the plaintiff discovered that the defendant was not, in fact, the biological father, and she filed a motion to revoke paternity. *Id.* at 162-163. The Court of Appeals held that "an affiliated father exists when, in a court of law, a dispute or question about a man's paternity has been settled or resolved and it was concluded by the court, on the basis of reasoning or observation, that the man is the child's father." *Id.* at 168. The Court reasoned that because the child was born during the marriage, the divorce judgment merely recognized the presumption of paternity for a child born during a marriage, and because this presumption was never challenged, the trial court never "determined" the issue of paternity. *Id.* at 171.[1]

---

[1] The defendant in *Glaubius* appealed the Court of Appeals' decision to this Court, which granted leave to appeal, asking the parties to brief, *inter alia*, "(1) whether the defendant was merely the 'presumed father' of the minor child, see MCL 722.1433(4), or whether he was the 'affiliated father,' see MCL 722.1433(2), due to certain aspects of the parties' divorce judgment—provisions that 't[ook] as confessed' the complaint allegation that the

Accordingly, it concluded that the defendant was not an "affiliated father" under MCL 722.1433(1). *Id.*

I believe that *Glaubius* likely erred by interpreting MCL 722.1433(1) to require a determination "*by* a court" when it actually requires only a determination "*in* a court." The use of the word *in* suggests that an "affiliated father" may exist even if the court has not separately decided paternity. The parties here, at least arguably, *did* have it determined "*in* a court" that defendant was the child's father when they agreed and finalized their consent judgment of divorce. Based on this understanding, when a controversy over paternity has been finalized *in* a court, the father is an "affiliated father." The proper interpretation of ROPA, which was enacted only in 2012, constitutes an "issue involv[ing] a legal principle of major significance to the state's jurisprudence," MCR 7.305(B)(3), and therefore I would grant leave to appeal to reconsider *Glaubius*'s interpretation of MCL 722.1433(1).[2]

Additionally, I believe that the Court of Appeals majority's application of the *Glaubius* standard "will cause material injustice." MCR 7.305(B)(5)(a). Under ROPA, the paternity of an "affiliated father" may only be revoked if "paternity was determined based on the affiliated father's failure to participate in the court proceedings . . . ." MCL 722.1439(1). Because defendant here *participated* in the proceedings, if he were an

---

parties had had one child, that referred to the parties as mother and father, and that provided for child custody and visitation." *Glaubius v Glaubius*, 497 Mich 929 (2014). However, the appeal was dismissed before oral arguments by stipulation of the parties. *Glaubius v Glaubius*, 498 Mich 899 (2015).

[2] Moreover, it is questionable whether the Court of Appeals majority correctly applied *Glaubius* to the present facts. In *Glaubius*, the Court of Appeals held that defendant was not an "affiliated father" because the court did not *determine* his paternity, but rather merely recognized the presumption of paternity for a child born during a marriage. *Glaubius*, 306 Mich App at 171; MCL 722.1433(e). Here, by contrast, there is no statutory presumption because the child was born one day before the marriage. Thus, when the issue was raised and the trial court entered a judgment of divorce naming defendant as the father, this arguably "determined" the issue. It is unclear, under *Glaubius*, how focused, or how exclusively focused, a judicial proceeding must be upon the father's status in order to give rise to an "affiliated father" determination. Thus, even if *Glaubius* did correctly interpret MCL 722.1433(1), I would still grant leave to appeal to consider whether the Court of Appeals majority properly applied its standard to the instant facts.

"affiliated father," his paternity could not be revoked. By contrast, if defendant is not an affiliated father, he does not fit within any of the five classifications of fathers in MCL 722.1433, and therefore his paternity would likely be revoked.[3]

Of utmost importance in cases involving child custody and paternity is to protect the best interests of the child. Defendant here is the *only* father that BT, who is now five years old, has ever known, and there is nothing in the record to indicate the identity of BT's biological father. Defendant has cared for BT since birth and has repeatedly and unequivocally sought to remain BT's father, notwithstanding the DNA test that showed he is not BT's biological father. Moreover, defendant has presumably used his joint custody and parenting time since the divorce judgment was entered to continue to maintain and strengthen his bond with BT. It is undisputedly in the best interest of a child to have a strong relationship with a father who loves and cares for him, as opposed to having no father at all. Accordingly, applying *Glaubius*'s interpretation of MCL 722.1433(1) in this case will almost certainly "cause material injustice" because BT will likely be deprived forever of a committed and loving father. MCR 7.305(B)(5)(a).[4]

Rather than deny leave to appeal, which effectively maintains the *Glaubius* standard as the binding interpretation of MCL 722.1433(1) for all Michigan courts, and to allow a child to be deprived of a father on the basis of that likely erroneous interpretation, I would grant leave to appeal.

---

[3] It is deeply worth noting that defendant married plaintiff *one day* after the child was born, leaving him only one day shy of being a "presumed father" under MCL 722.1433(e), and that he believed—albeit incorrectly—that he had signed an acknowledgment of parentage form for BT, which would have made him an "acknowledged father" under MCL 722.1433(a).

[4] That this result "will cause material injustice" is further supported by the fact that, as Judge MARKEY noted in her dissent, plaintiff, "from the child's birth, deliberately and repeatedly asserted in many contexts that defendant was BT's father," such as on the child's birth certificate and in her complaint for divorce (in which she sought child support from defendant). *Dennis*, unpub op at 5 (MARKEY, J., dissenting).



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

February 7, 2018



Clerk

s0123